**UNITED STEELWORKERS OF AMERICA, AFL–CIO**

v.

**CANRON, INC., Appellant, and Warren Pipe & Foundry Division.**

**No. 77–1722.**

United States Court of Appeals, Third Circuit.

Argued Feb. 16, 1978.

Decided June 26, 1978.

Riker, Danzig, Scherer & Debevoise, Newark, N.J., Sullivan & Cromwell, New York City, for appellant; James S. Rothschild, Jr., Alexander P. Waugh, Jr., Newark, N.J., Ray L. LeFlore, New York City, of counsel.

Rothbard, Harris & Oxfeld, Newark, N.J., Bredhoff, Gottesman, Cohen & Weinberg, Washington, D.C., for appellee; Emil Oxfeld, Doane Regan, Newark, N.J., George H. Cohen, Jeffrey L. Gibbs, Washington, D.C., of counsel.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The Supreme Court recently decided that an employer may be required to arbitrate a dispute over severance pay even though the dispute, governed by the arbitration article of a collective bargaining agreement, arises after the contract's expiration. *Nolde Brothers v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). This case presents a converse situation. The principal issue presented on this appeal is whether an employer may be required to arbitrate a dispute over medical and health insurance premium payments for retirees pursuant to its existing collective bargaining agreement even though such retirees had not been employed by the employer, but by a predecessor company, and had retired before the employer had entered into a collective bargaining agreement with their union representative.

### I.

On April 24, 1970, Canron, Inc., ("Canron") acquired certain property and assets of Shahmoon Industries, Inc., ("Shahmoon"), now known as Shire National Corporation, which Shahmoon had used in its Warren Pipe & Foundry Division in Phillipsburg, New Jersey. Shahmoon was not dissolved but continues to exist as a separate, ongoing business enterprise with substantial assets and operations in other locations in New Jersey. At the time of the sale to Canron, Shahmoon was a party to an existing collective bargaining agreement with the United Steelworkers of America, AFL–CIO ("the union") for Shahmoon's Phillipsburg plant. The agreement, effective August 1, 1969, for a term of three years, required Shahmoon to provide certain health and life insurance coverage for employees of the Warren Pipe and Foundry Division who retired before Shahmoon terminated its Phillipsburg operation.[1]

---

1. Section 15A–6 of Shahmoon's 1969 Agreement provided:

    The Corporation [Shahmoon] agrees to provide Blue Cross and Blue Shield coverage for retired employees and all eligible dependents.

    Section 15C of Shahmoon's 1969 Agreement provided:

Following the expiration of the 1969 collective bargaining agreement, Canron negotiated a three year labor contract with the union for employees at its recently acquired Phillipsburg plant effective August 1, 1972. This agreement was virtually identical to Shahmoon's 1969 collective bargaining agreement for its Warren Foundry Division and the language of sections 15A–6 and 15(c) pertaining to health and life insurance coverage for retirees remained precisely the same. During the period between April 24, 1970, when Canron acquired Shahmoon's assets and July 31, 1972, Canron honored the terms and provisions of Shahmoon's unexpired 1969 labor agreement except for the health and life insurance obligations.[2] As to these, Shahmoon continued to pay the health and life insurance premiums for those employees who had retired before the sale to Canron until it gave written notice to its retirees on July 1, 1974, that it would no longer continue to do so. Upon learning of this action, the union responded by letter dated July 24, 1974, demanding that Shahmoon comply with the 1969 labor agreement and gave notice that it intended to hold the company "liable for the payment of health and life insurance premiums for retirees under the August 1, 1969" labor contract. When the union ascertained that Shahmoon would not comply, it immediately made demand upon Canron to pay the premiums. Canron replied by telegram that it did not intend to underwrite the cost of the medical and life insurance benefits for Shahmoon's retired employees "since

these employees were never employees of Canron, Inc." The union thereupon submitted a grievance to Canron requesting expedited arbitration of the dispute under section 8 of the existing collective bargaining agreement with Canron.[3]

Section 8 is a common type of grievance clause providing for adjustment of differences between the employer and the union as to the meaning and application of the provisions of the contract terminating with arbitration. By letter dated August 2, 1974, Canron rejected the union's demand for arbitration because the grievance did not fall within the terms of the arbitration clause, the retirees never having been Canron's employees. Canron suggested that the grievance be directed to Shahmoon. The union thereupon instituted an action against Canron under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") in the United States District Court for the District of New Jersey to compel arbitration.

Each of the parties filed *motions for summary judgment*. The district court granted the plaintiff-union's motion, denied the defendants' motion and accordingly entered judgment in favor of the plaintiff. Defendant's appeal followed.[4] We affirm the district court.

## II.

The plaintiff's theory in the district court and on this appeal is that the current collec-

---

The Corporation [Shahmoon] agrees to provide life insurance coverage . . . in the amount of Two Thousand Dollars ($2,000) for each pensioned employee, such insurance to be effective at the expiration of the thirty (30) working-day probationary period.

2. *Section 21 of the 1969 labor contract provided:*

It is hereby agreed that the terms and provisions of this Agreement shall be binding upon the successors or assigns of the respective parties hereto.

3. Section 8 provides for the adjustment of differences "between the company and the union or its members employed by the company as to the meaning and application of the provision" of the agreement and sets up a grievance pro-

cedure which terminates in step 5. Step 5 provides for arbitration by an impartial umpire appointed by the American Arbitration Association in accordance with its rules.

4. This court has jurisdiction of this appeal under 28 U.S.C. § 1291, as an appeal from a final order of the district court. An order directing arbitration in a suit brought under section 301(a) of the LMRA has been held appealable as a final order when it is not merely a step in the judicial enforcement of a claim, nor auxiliary to the principal proceedings. *Goodall-Sanford v. Textile Workers*, 353 U.S. 550, 551–52, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); *Gavlick Construction Co. v. H. F. Campbell Co.*, 526 F.2d 777, 782 (3d Cir. 1975).

tive bargaining agreement between the parties obligates the incumbent employer, Canron, to arbitrate the dispute. Judge Barlow, in an unreported letter opinion, correctly perceived the district court's role to be limited to merely determining whether the issue was arbitrable. He concluded, citing our decision in *Amalgamated Meat Cutter and Butcher Workmen v. Cross Brothers Meatpackers*, 518 F.2d 1113 (3d Cir. 1975), that the dispute required an interpretation of the *existing* labor contract between the parties and therefore was arbitrable.[5]

On appeal, Canron levels a twofold attack at the district court's decision. First, it argues that the district court lacked subject matter jurisdiction because section 301 of the Act clearly limits federal jurisdiction to suits for violations of contracts between an employer and a labor organization. Canron asserts that because it never employed the Shahmoon retirees, nor ever contracted to provide any benefits to them, they have no contractual rights to assert against Canron. Moreover, the arbitration provisions of the 1972 collective bargaining agreement are limited by its terms to the interpretation and application of the provisions of *that agreement* and could not properly, Canron avers, "be held to apply to claims on behalf of Shahmoon's retirees." Second, Canron contends that under *Allied Chemical and Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the union lacks standing to sue on behalf of Shahmoon's retirees because a union is precluded from representing "any individual who has ceased to work without expectation of further employment." *Id.* at 169, 92 S.Ct. at 392. We reject both of these contentions.

### III.

We address first the company's contention as to standing. In *Allied Chemical,*

*supra,* the employer was charged with an unfair labor practice because it had unilaterally made a mid-term modification of benefits to its retired employees. The National Labor Relations Board concluded that retirement benefits of already retired employees was a mandatory subject of bargaining. The court of appeals disagreed, holding that "retirees are not 'employees' within the meaning of section 8(a)(5) and [so] the Company was under no constraint to collectively bargain improvements in their benefits with the Union." *Pittsburgh Plate Glass Co. & Chemical Division v. NLRB*, 427 F.2d 936, 942 (6th Cir. 1970). The Supreme Court affirmed, holding that retirees were not "employees" and could not be included in the bargaining unit. *Allied Chemical, supra,* 404 U.S. at 170, 92 S.Ct. 383.

*Allied Chemical,* however, which merely determined whether a retiree was an "employee" for the purposes of section 2(3) of the NLRA, is inapposite in the instant case. The issue here is not whether the employer must bargain with the union over the benefits of the retired employees of Shahmoon, but whether Canron did in fact *contractually* commit itself to underwrite the premium costs for the health and life insurance benefits of the retirees. The union contends that the terms "retired employees" and "pension employee" as used in the current collective bargaining agreement with Canron applies to all employees of the Warren Pipe Division, including those who had already retired as of the date of sale of Shahmoon's Phillipsburg plant to Canron. If Canron had contractually agreed in this 1972 labor contract to continue such premium payments for Shahmoon's retirees, then under accepted contract principles the union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract

---

5. The theory of the plaintiff is dissimilar from the theory of the union in *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board, Hotel and Restaurant Employees and Bartenders International Union*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), cited by Canron. In *Howard Johnson*, the union was attempting to enforce arbitration under a pre-existing collective bargaining agreement to compel Howard Johnson to employ all of the former employees of the predecessor employer.

provisions.[6] Even though retirement benefits of former employees already retired are not a mandatory subject of collective bargaining, "it does not naturally follow, as the company implies, that a union loses all interest in the fate of its members once they retire." *Rosen v. Public Service Electric & Gas Co.*, 477 F.2d 90, 94 n. 8 (3d Cir. 1973). We therefore hold that the plaintiff-union has standing to represent the retirees in seeking arbitration under its labor contract with Canron.

We now turn to Canron's contention that the grievance and arbitration provisions of its contract with the union cannot be applied to persons it never employed. In support of this proposition, Canron argues that it is apparent from the early steps of the grievance procedure of the contract that retirees are not covered and the procedure only applies to work-related disputes.[7] Inasmuch as arbitration is the terminal point of the grievance machinery, the company points out that arbitration is the *quid pro quo* for the union's promise not to strike when differences arise as to the meaning and application of the collective bargaining agreement and perforce is necessarily limited to its current employees who have the ability to strike.

To the contrary, the union asserts countervailing arguments to support its theory that arbitration is required. When Shahmoon sold its plant to Canron, section 15 of the collective bargaining agreement then in force provided, as we have already indicated, that the company pay the health and life insurance premiums for retired employ-

ees. Canron commenced its operations at Phillipsburg immediately upon purchasing Shahmoon's assets and hired substantially the existing work force. It is uncontested that from July 24, 1970, until it negotiated its own collective bargaining agreement with the union in August 1972, Canron honored the wages, benefits, and other terms of the contract, except for the insurance benefits. Yet, when Canron negotiated a new agreement effective August 1, 1972, it made no substantive changes in section 15 relating to the health and life insurance coverage for retirees. Moreover, the definition of retired or pensioned employees remained unchanged. Nevertheless, Shahmoon continued to pay the insurance premiums for the medical and health insurance of its retired employees as required by section 15 until July 1, 1974, when it notified the retirees that it would no longer pay the premiums. Inasmuch as Canron continued to honor the terms of the 1969 agreement, except for the insurance premiums, and later negotiated its own collective bargaining agreement incorporating identical terms for premium payments for retirees, it cannot be positively stated that the proposed arbitration is not susceptible to an interpretation under the contract which covers the dispute.

■ The district court stated that it was not made aware of any language in the agreement which "specifically excludes arbitration of the instant dispute" as there was in *Howard Johnson, Inc. v. Hotel Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), cited by Canron. We have found none either. The duty to arbi-

---

**6.** The Supreme Court made an interesting observation in *Allied Chemical, supra,* which bears on the issues here:

> Since retirees are not members of the bargaining unit, the bargaining agent is under no duty to represent them with the employer. . . . This does not mean that when a union bargains for retirees—which nothing in this opinion precludes if the employer agrees—the retirees are *without protection.* Under established contract principles, vested retirement rights may not be altered without the pensioners' consent.

404 U.S. 181, n. 20, 92 S.Ct. at 399.

**7.** The grievance procedure involves an "aggrieved employee" and commences with a step

discussion between the aggrieved employee, the shop steward, and the foreman of the department involved. If a satisfactory settlement is not achieved, the grievance committee and the aggrieved employee then move on to step 2 and meet with the foreman and superintendent of the department; if a satisfactory settlement is not reached at step 2, then step 3 provides for the submission of a written grievance to the plant superintendent. Step 4 provides for discussion of the grievance between the grievance committee, the aggrieved employee and representatives of the international union and of the company; step 5 finally provides for submission of the grievance to arbitration.

trate springs only from the collective bargaining agreement and we look to the contract to ascertain whether the dispute over the retirees' insurance benefits is arguably covered by the contract. In this connection, we must heed the Supreme Court's admonition in the landmark trilogy cases on labor arbitration that

> [a]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The instant dispute involves the interpretation and application of section 15 of the 1972 bargaining agreement. The parties reasonably differ as to its meaning. The company's argument that the grievance and arbitration procedure is limited only to active employees, although plausible,[8] is not sufficient in the circumstances before us and in light of other references in the 1972 labor contract to prior service[9] to meet Canron's burden that the arbitration clause is not susceptible of an interpretation that covers this dispute. *Id.*

> [T]he requirement of arbitration is not necessarily limited to grievances "arising in the plant" . . . at least not to the extent that it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Pottery Workers v. Celotex Corporation*, 84 L.R.R.M. 3007 (C.D.D.C.1973).

In determining the very limited issue before us—the arbitrability of the dispute—the "bottom line" is not calculated by the status of the grievants but by the nature and duties of the obligations of the parties under the contract. We hold, without in any way deciding the merits of the underlying differences between the parties that arbitration of this dispute may be compelled, under section 301 of the Act, regarding the payment of premiums for medical and health insurance coverage of retired employees.

The judgment of the district court will be affirmed.

---

8. The employees in the bargaining unit were hired by Canron for the first time on or about April 25, 1972. An immediate question then arises as to the purpose to be served in retaining the insurance provisions contained in section 15 of the 1969 agreement when Canron obviously had none of its own retirees then, or retirees who could be anticipated during the term of that contract.

9. For example, section 15(D) of Canron's 1972 labor contract refers to an agreement effective August 1, 1966, "to establish a pension plan in the next year or two . . . ." Section 1 of the pension plan attached to the labor contract refers to retirement on or after August 1, 1963, a point in time long before Canron acquired Shahmoon's Phillipsburg plant. Section 1(1) provides: "Any employee who, at the time of his retirement on or after August 1, 1963, shall have had at least 15 years continuous service and shall have attained the age of 65 years, shall be entitled to receive a pension upon his retirement."