616 F.2d 97
 103 L.R.R.M. (BNA) 2798, 88 Lab.Cas. P 11,914
 WESTINGHOUSE BROADCASTING CO., INC.
v.
LOCAL 804, INTERNATIONAL ALLIANCE OF THEATRICAL STAGE
EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF
the UNITED STATES AND CANADA
and
American Arbitration Association, Westinghouse Broadcasting
Company, Appellant.
 No. 79-2109.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 14, 1980.
Decided March 12, 1980.
 
 Robert M. Landis (argued), Steven B. Feirson, Dechert Price & Rhoads, Philadelphia, Pa., for appellant.
 Richard H. Markowitz (argued), Robert C. Cohen, Markowitz & Richman, Philadelphia, Pa., for appellee, Local 804, Intern. Alliance of Theatrical Stage Emp. and Moving Picture Machine Operators of the United States and Canada.
 Before ALDISERT, WEIS and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This appeal from a summary judgment in favor of the union ordering arbitration of a grievance presents a narrow issue for decision. We must decide if, by its order, the district court required the arbitrator to decide in the first instance whether the grievance was arbitrable. If so, the order is defective because "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court," Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962), and not by the arbitrator.
 
 I.
 
 2
 The controversy arises from an attempt by the union to grieve the employment termination of Andrew McKay at age sixty-five. The company vigorously contends that McKay's termination was a retirement governed by the Westinghouse Pension Plan, and as such it is not a proper subject for grievance. The union argues that the termination was a discharge without just cause, and therefore arbitrable. The problem illustrates the tension between provisions contained in two agreements entered into by the company and the union the collective bargaining agreement, known as the IATSE, Local # 804, KYW-TV Agreement, and the Pension and Insurance Agreement.
 
 
 3
 Article IX of the collective bargaining agreement described the company's right "to discharge any of its employees for just cause." App. at 39a. Article XI of the agreement, entitled "Grievance and Arbitration," provided that all grievances, disputes and differences with respect to the interpretation or application of the agreement were to be resolved through the grievance procedure, which culminated in final and binding arbitration. Article V of the collective bargaining agreement disclosed that the parties "have executed a Pension, Insurance and Personal Savings Plan Agreement which extends the benefits of those Plans to the employes covered by this Agreement." App. at 33a.[1] Article I, Section 3(a) of the Pension and Insurance Agreement provided that its terms "are accepted by the Union, for the duration of this Agreement, as a complete insurance, pension and savings program." App. at 60a. Section 3(b) provided:
 
 
 4
 It is further understood that no matter respecting any Plan provided by this Agreement or any differences arising under any such Plan, or ( ) concerning any benefits payable by the Company under any such Plan or any benefits the payment of which could or might be insured by the Company, shall be subject to any grievance or arbitration procedure which may be established by agreement between the Company and the Union.
 
 
 5
 App. at 61a.
 
 
 6
 What has triggered the immediate dispute is a compulsory retirement provision contained in neither the collective bargaining nor the Pension and Insurance agreements, but set forth in the Westinghouse Pension Plan, a plan specifically referred to in Article I, Section 3(a) of the Pension and Insurance Agreement. Section 2.A of the Westinghouse Pension Plan provided:
 
 
 7
 (A)n Employe shall retire from service with his Employer on the first day of the month following the month in which his 65th birthday occurs. . . .
 
 
 8
 App. at 101a.
 
 II.
 
 9
 Although this matter is before us on appeal from a summary judgment, the parties agreed at oral argument that no material issue of fact prevented a proper exercise of the summary judgment power of the district court. The litigants before us continue to maintain the positions they asserted before the district court. For its part, the company relies on Section 3(b), the non-arbitrability provision of the Pension and Insurance Agreement. The union responds that this language must not be interpreted in vacuo. This section refers only to controversies over details of the plan, the union contends, whereas the overarching issue of compulsory retirement at age sixty-five is governed by Articles IX and XI of the collective bargaining agreement.
 
 
 10
 The district court did not decide the arbitrability issue clearly in favor of either side. Although it ordered the matter to arbitration, its order reserved to the parties the right to challenge the arbitrator's jurisdiction. The district court's oral opinion in support of its order goes even further, and we believe that a fair reading of that opinion supports the conclusion that the district court was willing to delegate to the arbitrator the power and authority to determine the arbitrability vel non of the issue. For example, the court stated: "It seems to me that this is a case where it is possible for the arbitrator to determine . . . that this is a dispute within the terms of the agreement. . . ." App. at 168a. Here the court erred, and in so doing, based its reasoning on an improper interpretation of International Union of Electrical, Radio and Machine Workers Local 103 v. RCA Corp., 516 F.2d 1336 (3d Cir. 1975). Describing Local 103 the district court said:
 
 
 11
 (A)s I interpret the case, at least the Court of Appeals ruled that the arbitrator himself is in a position in many cases to determine whether or not an issue is arbitrable, and that the Courts have the right to decide in the first instance that a case is not arbitrable only in those very clear situations where it can be said positively in advance that it is a matter that is not subject to arbitration.
 
 
 12
 App. at 166a.
 
 
 13
 Nowhere in Local 103 did our court "(rule) that the arbitrator himself is in a position in many cases to determine whether or not an issue is arbitrable." Indeed the emphasis is to the contrary:
 
 
 14
 Congress, pursuant to § 301 (of the Labor Management Relations Act), has assigned to the courts the duty of determining whether a particular matter is arbitrable. . . . The reason for this assignment is obvious: "(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."
 
 
 15
 516 F.2d at 1339 (citations omitted). We did decide in Local 103 that it is for the arbitrator, and not the court, to decide whether the question or issue presented before an arbitrator in 1971 had previously been submitted before another arbitrator in 1946.
 
 III.
 
 16
 It therefore becomes necessary to vacate that portion of the district court's order that delegates to the arbitrator the responsibility of deciding the arbitrability of the dispute. Rather than remand the matter to the district court for a decision on arbitrability, in the interests of judicial economy and fortified by the representations of counsel that the issue is one of law for which no facts need be adduced, we have decided to determine the issue of arbitrability at this time. The controlling legal precept is familiar:
 
 
 17
 An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
 
 
 18
 United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).
 
 
 19
 Examination of the collective bargaining agreement discloses that other agreements and understandings were incorporated therein by reference. Thus, Article V stated that the parties have executed the Pension and Insurance Agreement, an agreement which in turn made specific references to matters ordinarily associated with a collective bargaining agreement. For example, Article I, Section 3(a) of the Pension and Insurance Agreement stated: "(T) here shall be no strike, slowdown, sitdown, or other form of stoppage of work arising out of or conducted in connection with any effort to induce modifications of or amendments or additions to the insurance, pension, and savings programs. . . ." App. at 61a. Article XI of the collective bargaining agreement provided for grievance and arbitration, while Article I, Section 3(b) of the Pension and Insurance Agreement provided that "no matter respecting any Plan provided by this Agreement . . . shall be subject to any grievance or arbitration procedure which may be established by agreement between the Company and the Union." App. at 61a. Finally, Article IX of the collective bargaining agreement described the company's "power to discharge . . . any of its employees for just cause," App. at 39a, whereas the Westinghouse Pension Plan, incorporated as part of the Pension and Insurance Agreement, see App. at 57a, contains a specific retirement age. Faced with this array of interrelated agreements, plans and provisions, we cannot say "with positive assurance," United Steelworkers, 363 U.S. at 582, 80 S.Ct. at 1353, that the arbitration Article XI is not susceptible of an interpretation that covers the asserted dispute. Because doubts as to arbitrability must be resolved in favor of arbitration, we conclude that the grievance was a proper subject for arbitration.
 
 
 20
 The judgment of the district court will be vacated and the proceedings remanded to that court with a direction that it enter the appropriate arbitration order in accordance with the foregoing.
 
 
 21
 Each side to bear its own costs.
 
 
 
 [1]
 Technically speaking, the relevant collective bargaining agreement was dated May 2, 1976 and the Pension and Insurance Agreement was dated August 1, 1976. See App. at 20a, 55a