**PRINTING SPECIALTIES AND PAPER PRODUCTS UNION LOCAL 680, Graphic Communications International Union, AFL–CIO, Beacon Printing Pressmen, Assistants and Carton Workers' Union Local 414, Graphic Communications International Union, AFL–CIO, Plaintiffs,**

v.

**NABISCO BRANDS, INC., Defendant.**

No. 85 C 8828.

United States District Court, N.D. Illinois, E.D.

Sept. 2, 1986.

this set-off item and has not proved an earlier date, we will use November 30, 1981, as the date from which interest will run.

Eugene Cotton, Thomas D. Allison, Cotton, Watt, Jones & King, Chicago, Ill., for plaintiffs.

Max G. Brittain, Jr., Christopher B. Nelson, Kovar, Nelson & Brittain, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The parties have asked the Court to determine which procedural road they should follow in resolving a dispute over pension benefits for certain employees. Printing Specialties and Paper Products Union Local 680 ("Local 680") and Beacon Printing Pressmen, Assistants, and Carton Workers' Union Local 414 ("Local 414") bring this action against Nabisco Brands, Inc. ("Nabisco") under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982).[1] Local 680 represents former employees of Nabisco's mill and printing plant in Marseilles, Illinois, while Local 414 represents former employees of Nabisco's printing and carton plant in Beacon, New York. Local 680 and Local 414 ("the Unions") have sued under Section 301 to compel arbitration of a dispute regarding the denial of early retirement benefits provided in Nabisco's pension plan ("the Plan"). Nabisco has moved for summary judgment, arguing that the dispute is not arbitrable because the individual employees who were denied pension benefits must pursue their claims under the internal procedure provided by the Plan. The Unions also move for summary judgment, contending that the pension claims fall within the scope of disputes which must be arbitrated under the terms of their respective collective bargaining agreements ("CBAs").[2] After concluding that there are no genuine issues of material fact, the Court has determined that summary judgment should be granted to Nabisco and denied to the Unions.

---

1. That provision states:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. Throughout this opinion, the Court will refer to collective bargaining agreements in general as CBA(s) for the purpose of simplicity rather than using the rather cumbersome phrase time after time.

## FACTUAL BACKGROUND

At the time that relevant events occurred in this case,[3] both Unions had entered into CBAs with Nabisco regarding the employees at the two respective plants. In addition to establishing terms for working conditions and other matters, both CBAs contain broad arbitration clauses which provide for an internal grievance process followed by final binding arbitration regarding disputes arising under the agreement. The Local 680–Nabisco arbitration clause states that arbitration is required regarding "any grievance or misunderstandings involving wages, hours or working conditions which any employee may desire to discuss and adjust with the company." Article 9, Local 680 Agreement. The Local 414–Nabisco arbitration clause provides for the arbitration of "any differences or disputes which may arise with regard to the meaning, interpretation, application, or breach of this agreement." Article 36, Local 414 Agreement.

During past contract negotiations with Nabisco, the Unions have made demands for specific improvements in pension benefits. Charles S. Wesley, First Affidavit at ¶ 3. At the time of the 1982 negotiations between Local 414 and Nabisco, a minor change was made regarding the pension amounts and recorded in a "Memorandum of Understanding" between these two entities. However, this change was not included as a term of the CBA following that negotiation. Nabisco has always maintained that the present pension plan has existed substantially unchanged since before the latest collective bargaining agreements were entered and that changes to the Plan can only be made by the Employee Benefits Committee ("the Committee"). *See* Howard W. Snyder Affidavit at ¶ 7. Nonetheless, in each CBA here, Nabisco pledged to continue the present pension plan in full force during the tenure of each contract. Article 17, Local 680 Agreement; Article 12, Local 414 Agreement. The current pension plan provides for a standard early retirement pension and a "job elimi-

nation pension" if the duties of an employee are terminated. Under the provisions of the Plan, an employee who has been denied a benefit claim may file a request for review by the Committee.

In December 1984, Nabisco sold both the Beacon and Marseilles plants to the Federal Paper Board Company ("Federal"). Federal offered continued employment to former Nabisco employees at both plants and recognized the Unions as the exclusive bargaining agents for those employees. Some of the former Nabisco employees applied for early retirement benefits while continuing to work for Federal. Initially, the Committee denied those claims, but it appears that the parties have resolved this aspect of the dispute. *See* Stipulation at ¶ 28. Some employees regarded the sale of the plants to Federal as a job termination and sought job elimination pension benefits under the Plan. The Committee denied these claims, reasoning that since continued employment with Federal was provided, the employment duties were not terminated. Soon thereafter, the Unions filed grievances on behalf of the employees claiming job elimination benefits. Nabisco denied that the CBAs had been violated and refused to arbitrate the grievances. Meanwhile, the individual employees had made claims under the Plan for job elimination benefits. The Committee later denied all such claims. This suit followed.

Each party has now moved for summary judgment, relief which can only be granted where the moving party has established that there is no genuine issue of material fact, thus entitling that party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). On each party's motion, the Court must view inferences to be drawn from the underlying facts in the light most favorable to the non-moving party in determining whether there is a genuine issue. *Korf*, 726 F.2d at 1226. With these standards in mind, we turn to the arbitrability of the pension benefit claims.

---

**3.** The facts necessary to dispose of this case are essentially undisputed. We draw our facts from the stipulation of facts and stipulated exhibits submitted to the Court by the parties as well as affidavits filed in support of the summary judgment motions.

## ARBITRABILITY OF PENSION BENEFIT CLAIMS

This Court's task in evaluating an action under Section 301 is to interpret the parties' rights and obligations from the provisions of their contract to determine whether the parties intended to arbitrate a particular grievance. Where, as here, the CBA contains a broad arbitration clause, we must follow the standard first articulated by the Supreme Court in the *Steelworkers Trilogy*.[4] In Section 301 actions for compelled arbitration, the court's role is to ascertain "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). It is the court's role not to evaluate the merits of the underlying dispute, but to determine whether the parties intended to arbitrate the grievances of that dispute. *AT & T Technologies, Inc. v. Communication Workers of America*, — U.S. —, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986).

In the present case, there is a general provision in the collective bargaining agreements that the present pension plan shall be continued "in full force and effect" for the term of the agreements.[5] The Unions' argument is quite simple. The denial of job elimination pension benefits to those employees who sought them after the two Nabisco plants were sold is a violation of Nabisco's promise to continue the pension plan "in full force and effect." Thus, in accordance with the broad arbitration clauses embodied in each CBA, this dispute should be submitted to an arbitrator. Nabisco's argument is simple as well. The promise to keep the Plan in full force and effect does not include any guarantees regarding the payment of particular claims under the Plan which may be disputed. The Plan has been set up in accordance with the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982 & Supp.II 1984), and has its own internal remedies to deal with disputed claims under the Plan's terms. Furthermore, Nabisco reasons that it is the Plan which has denied the benefits to the individual union members and which should be the defending party in any ensuing litigation.

Case law in this area has developed on a very fact-specific basis. Courts have struggled to find arbitrability where that result can be harmonized with the language in the relevant CBA and the agreement does not explicitly exclude the dispute in question from arbitration. Interestingly, few cases even mention the implications of ERISA on the outcome of the arbitrability determination, a factor on which Nabisco relies almost completely in its various memoranda on the cross-motions for summary judgment. This focuses on the wrong issue. The question is only whether or not the disputed obligation for which arbitration is sought was arguably created by the CBA. *Local 589, International Ladies' Garment Workers' Union v. Kellwood Co.*, 592 F.2d 1008, 1012 (8th Cir. 1979).

---

**4.** *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**5.** The language of the pension provisions varies in form, but not substance, with regard to the two unions. Article 17 of the Local 680 Agreement states that "[t]he Company agrees to continue its present Pension Plan in full force and effect for the term of this Agreement." Article 12 of the Local 414 Agreement states that "[i]t is agreed that the Company's present Pension Plan will be kept in full force and effect for the duration of this Agreement."

In support of their claim, the Unions cite a line of case, not all of which are relevant to the outcome here. Some have addressed the arbitrability of pension disputes where the pension plan has specifically been incorporated into the CBA or bargained for as part of that agreement. *Adams v. Gould, Inc.*, 687 F.2d 27 (3d Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 348 (1983); *Westinghouse Broadcasting Co., Inc. v. Local 804, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators*, 616 F.2d 97 (3d Cir.1980). These cases are not instructive here, since the relationship between the CBAs and the pension plan in the present case is much more tangential. No language in either CBA suggests that the Nabisco pension plan has been adopted as part of the agreement. In other cases cited by the Unions, arbitration was dictated because the alleged violation more clearly offended the actual terms of the CBA. *RCA Corp. v. Local 241, International Federation of Professional and Technical Engineers*, 700 F.2d 921 (3d Cir.1983); *Westvaco Corp. v. United Paperworkers International Union, Local 1388*, 424 F.Supp. 250 (S.D.N.Y.1976).

The following cases cited by the Unions, however, are much closer to the case at bar and merit some discussion. In *Bressette v. International Talc Co., Inc.*, 527 F.2d 211 (2d Cir.1975), the CBA contained a broad arbitration clause and also referred to the pension plan. However, language in the separate pension agreement specifically excluded disputes under the pension plan from arbitration under the CBA. Nevertheless, treating seriously the Supreme Court's admonition that all doubts be resolved in favor of arbitration, the court found that since nothing *in the CBA* specifically excluded arbitration of pension issues, the broad language of the arbitration clause encompassed those disputes as well

as those more clearly arising from violations of the bargaining agreement. However, in *Bressette*, the CBA arguably incorporated the provisions of the pension plan and it appeared that at least some terms of the Plan had been negotiated within the context of collective bargaining. Thus, arbitration would seem to have been dictated by the nature of the pension plan's relationship to the CBA. Here, there is not as clear a relationship between the Plan and the CBA. Furthermore, no pension plan terms were included in the CBA as a result of negotiation. Although the Unions contend that they submitted proposed changes regarding the pension plan in the process of negotiating the current CBAs and withdrew them only in exchange for other concessions by Nabisco, Nabisco argues that such proposals were rejected on the basis of the company's inability to alter the terms of the pension plan, a function which it says was exclusively reserved for the Committee.[6]

In *United Steelworkers of America v. Fort Pitt Steel Casting Division-Conval-Penn, Inc.*, 635 F.2d 1071 (3d Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981), the company closed down its plant after unsuccessful attempts were made to bargain with the union. The union filed grievances related to the plant closing, including claims which were related to benefits under the pension plan. The pension plan had its own grievance and arbitration process, however, the court found that the CBA, which dictated that the parties arbitrate "any request or complaint" and did not exclude pension benefit disputes from arbitration, seemed to require arbitration. Nonetheless, in that case, too, the court recognized that the terms of the pension plan were arguably incorporated by reference into the CBA, a

---

**6.** Alternatively, Nabisco argues that there is at least a genuine issue of fact as to whether the terms of the pension plan were bargained over and, therefore, summary judgment should not be granted to the Unions. We do not find a genuine issue of fact here because the positions of the Unions and Nabisco are not necessarily

inconsistent. The Unions appear to have presented proposed changes in the Plan which were rejected by Nabisco. Though the parties differ on the reasons for that rejection, no pension terms were ever incorporated into the CBAs.

factor which would have been important to its determination of arbitrability.

Finally, in *Local 589, International Ladies' Garment Workers' Union v. Kellwood Co.*, 592 F.2d 1008 (8th Cir.1979), the court ordered arbitration of pension benefit disputes where the company had promised in the CBA to maintain all pension benefits in effect immediately prior to execution of the agreement. The Union claimed, and the court agreed, that the resolution of the dispute depended on the construction of that provision, a matter clearly within the province of the arbitrator. However, there the court was concerned with the failure to maintain pension benefits at all for individuals who were part of the pension plan prior to the creation of the CBA as opposed to individual claims under the specific terms of the plan. In the present case, the individuals represented by the Unions have a specific claim which is arguably provided for by the terms of the pension plan, not the CBA. Thus, no construction of the collective bargaining agreement's language is necessary such that arbitration is required.

These cases do not command a result in the current case which would require arbitration of the job elimination pension dispute. It is within this Court's power to interpret whether the language in the CBA promising to keep the existing pension plan "in full force and effect" means that a potential violation of the CBA has occurred where an individual has been denied benefits under specific provisions of the plan. We find that it does not. This would be a different case if Nabisco and the Unions had explicitly bargained over the terms of the pension plan and embodied their agreement in the CBA.[7] It would also be different if Nabisco had done something which abrogated the full force and effect of the pension plan, such as failing to adequately fund the plan or eliminating the Plan altogether. In evaluating claims for arbitration, courts must distinguish between activities by the employer which arguably violate the negotiated terms of the CBA and those which constitute claims requiring the interpretation or application of specific provisions of separate, unincorporated agreements. *See, e.g., RCA Corp.*, 700 F.2d at 927.

In this case, the dispute is controlled by the specific terms of the pension plan and the duties of interpreting those terms should not be designated to an arbitrator. Thus, we conclude that the Unions are seeking arbitration of claims which are not, on their face, governed by the CBA. Accordingly, since the Court finds no genuine issues of material fact and concludes that disputes over specific pension benefit claims as opposed to disputes over the continued existence of the Plan were not intended to be arbitrated under the CBA, we grant Nabisco's motion for summary judgment and deny the Unions' motion for the same. It is so ordered.

---

7. *Cf. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Keystone Consolidated Industries, Inc.*, 793 F.2d 810 (7th Cir.1986) ("suits to enforce pension rights *obtained under a collective bargaining agreement* may be brought under ERISA, 29 U.S.C. § 1132, or under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185") (emphasis added).