**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STEELWORKERS OF AMERICA;
ALBERTO AGUILAR, JR.; ANGEL L.
ARELLANO; JESUS M. CANABA;
FRANCISCO CARREON; FRANKLIN
DAVILA; JAIME O. FRAUSTO;
ARMANDO B. HIDALGO; SANTIAGO
MARTINEZ; HECTOR OCHOA; ISMAEL
ORTEGA; MAURICIO ORTEGA;
LORENZO RAMIREZ; SERGIO
RAMIREZ; ERNESTO ROBLES; CARLOS
RODRIGUEZ; ROBERTO ROMO;
RAMON SANCHEZ; ARTURO R.
SAUCEDO; UNITED STEELWORKERS OF
AMERICA, AFL-CIO, CLC; JESUS
M. URANGA; RUBEN R. VILLARREAL,
            *Plaintiffs-Appellees,*

v.

RETIREMENT INCOME PLAN FOR
HOURLY-RATED EMPLOYEES OF
ASARCO, INC.; ASARCO, INC.,
            *Defendants-Appellants.*

No. 05-16833

D.C. No.
CV-04-00010-
DCB/JJM

121

ALBERTO AGUILAR, JR.; ANGEL L.
ARELLANO; JESUS M. CANABA;
FRANCISCO CARREON; FRANKLIN
DAVILA; JAIME O. FRAUSTO;
ARMANDO B. HIDALGO; SANTIAGO
MARTINEZ; HECTOR OCHOA; ISMAEL
ORTEGA; MAURICIO ORTEGA;
LORENZO RAMIREZ; SERGIO
RAMIREZ; ERNESTO ROBLES; CARLOS
RODRIGUEZ; ROBERTO ROMO;
RAMON SANCHEZ; ARTURO R.
SAUCEDO; UNITED STEELWORKERS OF
AMERICA, AFL-CIO, CLC; JESUS
M. URANGA; RUBEN R. VILLARREAL,
            *Plaintiffs-Appellees,*

                v.

RETIREMENT INCOME PLAN FOR
HOURLY-RATED EMPLOYEES OF
ASARCO, INC.,
            *Defendant-Appellant,*

                and

ASARCO, INC.,
            *Defendant.*

No. 06-15862

D.C. No.
CV-04-00010-DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
October 15, 2007—San Francisco, California

Filed January 7, 2008

Before: J. Clifford Wallace and Johnnie B. Rawlinson,
Circuit Judges, and Jane A. Restani,* Judge.

Opinion by Judge Wallace

---

*The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

## COUNSEL

John Alan Doran and Leigh Anne Ciccarelli, Greenberg Traurig, LLP, Phoenix, Arizona, for the appellants.

Robert J. Stock and Jay Smith, Gilbert & Sackman, Los Angeles, California, for the appellees.

## OPINION

WALLACE, Senior Circuit Judge:

The Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc. (the Plan) appeals from the district court's summary judgment in favor of United Steelworkers of America, AFL-CIO (the Union), and twenty individually named retirees (the named appellees). The Plan also appeals from the district court's order granting attorney's fees and denying its motion to stay. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's summary judgment and its denial of the Plan's motion to stay. Although we agree

with the district court's award of attorney's fees, we remand to determine what effect, if any, the automatic stay in place for ASARCO, Inc. (ASARCO) should have on payment of the award.

## I.

ASARCO owns and operates a copper smelter plant in El Paso, Texas. Beginning in early 1999, the company substantially reduced operations at the plant, and began laying off employees. Among those laid off were the twenty named appellees. Under the relevant pension plan documents, these employees were entitled to collect immediate, unreduced retirement benefits if they qualified for "70/80" benefits. These benefits accrued to any claimant who could demonstrate that (1) he was laid off due to a permanent shutdown, (2) he was younger than 55 years, and (3) his age plus years of "Continuous Service" equaled at least 80. All of the named appellees were under the age of 55 at the time they applied for benefits. Applicants over the age of 55 were only required to demonstrate an age plus years of Continuous Service equal to 70, hence the term "70/80 benefits."

In 2001, after intense negotiations, the Union and ASARCO agreed that the staff reductions at ASARCO's El Paso plant would be treated as a "permanent shutdown" for purposes of calculating pension benefits. When the named appellees subsequently applied for 70/80 benefits, however, ASARCO denied their claims on the ground that their combined age and years of Continuous Service totaled less than 80.

The plan documents provide that employees may continue to accrue years of Continuous Service for up to two years after they are laid off. This concept is known as "creep," as it allows otherwise ineligible employees to "creep" into pension benefits. Although the combined age and years of Continuous Service of the named appellees did not total more than

80 at the commencement of layoff, at least some of the individuals would be entitled to 70/80 benefits if an additional two years of "creep" were added to the calculation.

On August 21, 2002, the Union filed a grievance on behalf of the named appellees, arguing that ASARCO had violated the collective bargaining agreement by failing to pay 70/80 benefits to the named appellees. ASARCO denied the grievance on September 26, 2002. A year later, the Union submitted a request for a panel of arbitrators to the Federal Mediation and Conciliation Service. When ASARCO refused to arbitrate, the Union filed a complaint in the district court to compel arbitration of the benefits claims under section 301(a) of the Labor Management Relations Act (LMRA) and section 502 of the Employee Retirement Income Security Act (ERISA). The complaint named both ASARCO and the Plan as defendants.

The district court entered summary judgment in favor of the Union. With respect to the Union's ERISA claims, however, the court held that the Union was not a proper party, and gave the Union ten days to substitute the named appellees in an amended complaint. The court made its summary judgment expressly contingent on this substitution.

The Union then filed an amended complaint adding the named appellees. Four days later, ASARCO filed for bankruptcy, resulting in an automatic stay of proceedings with respect to ASARCO pursuant to 11 U.S.C. § 362(a). The Plan then filed a motion in the district court to stay all proceedings. Meanwhile, the Union filed a motion for attorney's fees and costs, seeking $143,156.25. In an order dated March 13, 2006, the district court awarded $140,556.25 in attorney's fees and denied the Plan's motion to stay.

The Plan has timely appealed from the district court's summary judgment and from the order denying its motion to stay and awarding attorney's fees. Both appeals were consolidated.

## II.

We review the district court's summary judgment *de novo*. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). Our review in this case is limited. We are not required to determine whether the named appellees were *entitled* to 70/80 benefits, only whether they had the right to arbitrate their claims. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986). Both parties have presented a plausible interpretation of the relevant plan documents, and the outcome of this case ultimately turns on whether we apply a presumption of arbitrability.

## A.

**[1]** In 1960, the Supreme Court decided a series of cases known as the Steelworkers Trilogy: *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). The Court held that national labor policy favored arbitration, and courts should therefore apply a presumption in favor of arbitration to disputes arising from collective bargaining agreements. The Court instructed:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83 (footnote omitted). The Court reaffirmed this principle more recently in *AT&T Technologies*, 475 U.S. at 650. The Court held that the presumption of arbitrability "recognizes the greater institutional competence of arbitrators in interpreting collective-

bargaining agreements, furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *Id.* at 650 (internal citation and quotations omitted).

The Plan argues that the presumption of arbitrability is inapplicable here because the named appellees are retired. As such, they "pose no risk of labor disruption," and their claims "do not implicate federal labor policy." To support this argument, the Plan relies on the Eighth Circuit case of *Anderson v. Alpha Portland Industries, Inc.*, 752 F.2d 1293 (8th Cir. 1985).

**[2]** In *Anderson*, a group of union employees worked under a collective bargaining agreement with a cement company, which provided for health insurance benefits upon retirement. After the employees retired, however, the plant closed, the local union dissolved, and the company terminated insurance benefits for retirees. *Id.* at 1294. When the retirees sought redress in federal court, the district court dismissed their case on the grounds that they had not exhausted the administrative remedies in their contract, which called for mandatory arbitration. *Id.* at 1295. The Eighth Circuit, *en banc*, reversed and held that the presumption of arbitrability did not apply to the retirees. One of the reasons the court gave for disregarding the presumption was that "[r]etirees have no recourse to economic weapons other than a hope that active employees will strike on their behalf." *Id.* at 1298.

**[3]** In *Anderson*, the retirees posed little threat of economic disruption, because their union had dissolved and their plant had closed. The union was not a party in the proceedings, and the district court was effectively forcing the retirees into arbitration against their will. In contrast, other circuits have explicitly *applied* the presumption of arbitrability in cases where a union is actively seeking arbitration on behalf of its retirees. In *Cleveland Electric Illuminating Co. v. Utility*

*Workers, Local 270*, 440 F.3d 809, 814 (6th Cir. 2006), a union filed a grievance on behalf of a group of retirees. The union argued that the presumption of arbitrability should apply,"because it was the Union not the retirees who filed the grievance and the dispute is actually between the Union and Cleveland Electric." *Id*. The court agreed, and held that "the presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement . . ." *Id*. at 816.

Likewise, in the recent case of *United Steelworkers of America v. Cooper Tire & Rubber Co.*, 474 F.3d 271 (6th Cir. 2007), the Sixth Circuit specifically rejected the argument that retirees pose no threat of economic disruption. The court held:

> Because it is the Union, not a third party beneficiary, that brought the grievance . . . there is recourse to economic weapons such as striking. Moreover, even though the class consists of all non-Union member Retirees and Survivors, the Union still has an interest in resorting to economic weapons in order to maintain the integrity of the bargaining process.

*Id.* at 281. Finally, in *United Steelworkers of America v. Canron, Inc.*, 580 F.2d 77 (3d Cir. 1978)*,* a case cited in *Anderson*, the Third Circuit explicitly applied the presumption of arbitrability when a union filed a grievance on behalf of a group of retirees. *Id*. at 82.

[4] In the present case, it was the Union that sought arbitration, the Union that filed a complaint to compel arbitration, and the Union that actively pursued the litigation that followed. As a result, the threat of economic disruption is present to a much greater degree than it was in *Anderson*, and this case is more analogous to *Cleveland Electric*, *Cooper Tire*, and *Canron*. Therefore, we will not depart from the rule established by the Supreme Court in the Steelworkers Trilogy, and we will apply the presumption of arbitrability in this case.

**B.**

The Union and the Plan present competing interpretations of the relevant plan documents. The Plan characterizes the dispute over 70/80 benefits as a broad question of contract interpretation, one that is only properly resolved through the internal grievance procedure. The Union characterizes the dispute much more narrowly. It argues that the dispute is more akin to a ministerial disagreement over "age" and years of "Continuous Service."

To support its position, the Plan points to language in the first paragraph of the Summary Plan Description, which provides that all questions related to (1) "the interpretation of the Plan," (2) "eligibility of employees," and (3) "the amount of benefits payable in each individual case" are to be resolved through the internal grievance procedure. The Plan argues that the question of whether the named appellees can "creep" into coverage is ultimately a question of contract *interpretation*, one that will require an examination of the bargaining process that led to the plan documents.

In response, the Union cites language in the Pension and Disability Benefits Agreement which provides *arbitration* for disputes as to either "(a) the number of years of Continuous Service of an Employee" or "(b) the age of such Employee." The Union also points to language in the Summary Plan Description that describes arbitration as the "exclusive remedy" for disputes as to these two issues. Under the Union's interpretation, every employee is automatically entitled to two additional years of Continuous Service when he is laid-off. Therefore, when the retirees dispute the denial of their benefits, it is analytically no different than if ASARCO made a mistake as to an employee's numerical age or start-date of employment.

**[5]** We need not decide which side presents the better argument. Once we apply the presumption of arbitrability, the

question becomes much easier. We can only deny arbitration if it can be said "with positive assurance" that the dispute is "not susceptible of an interpretation" that would cause it to fall within the arbitration clause. *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83. Whether the Union's interpretation is the more persuasive of the two, it is at the very least a reasonable interpretation of the relevant language. Therefore, we hold that the district court did not err when it entered summary judgment in favor of the Union.

## C.

The Plan offers two remaining arguments as to why arbitration is inappropriate. First, the company asserts that the Union's request for arbitration was untimely. We have imposed a six-month statute of limitations for claims under section 301 of the LMRA. *See Local Joint Exec. Bd. of Las Vegas, Bartenders Union Local 165 v. Exber, Inc.*, 994 F.2d 674, 675 (9th Cir. 1993). This six-month period "begins to run from the time one party makes it clear that it will not submit the matter to arbitration." *Id.* (citation omitted).

**[6]** In August 2002, the Union filed a grievance under the collective bargaining agreement. On September 26, 2002, ASARCO sent a letter to the Union rejecting its grievance and stating "[t]hese issues are not an appropriate subject for the grievance and arbitration process." The Plan argues that this letter constituted a clear refusal to arbitrate, and the statute of limitations for filing a claim under the LMRA expired long before the Union filed its claim. However, the September 26, 2002 letter, by its terms, only constituted a denial of the Union's request to arbitrate its collective bargaining agreement grievance. In fact, the letter specifically directs the Union to the "separate claims procedure" for the benefits plan. Thus, the district court did not err when it determined the Union's LMRA claim to be timely. Nor did the district court violate Rule 56 when it decided the question on summary judgment. The district court was only required to draw

"all justifiable inferences" in favor of ASARCO, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and the language in ASARCO's letter is quite clear.

The Plan also argues that the retirees may not take advantage of the arbitration provision because they stopped being "employees" when they retired. Before we undertake a textual analysis of the relevant plan documents, it is important to recognize the practical ramifications of the Plan's argument. If the Plan is correct, then an employee who wants to challenge his pension can only do so *before* leaving the company, and *before* receiving a pension. If a recent retiree opened his first pension check and was surprised to find less than he had anticipated, he would be locked out of the very mechanism set up to resolve the dispute. With that in mind, we turn to the conflicting textual interpretations.

The Plan argues that retirees who wish to challenge their benefit calculations may only do so through the internal grievance procedure outlined in the Summary Plan Description. Under the terms of that document, the internal grievance procedure is available for "any application for a claim or benefits" by "the claimant." The Summary Plan Description then defines "claimant" to include "a surviving spouse, a retired employee or a terminated employee." In contrast, the Plan argues, the clear terms of the arbitration procedure provide that it "applies only to bargaining unit employees" and makes no mention of "claimants" or "retirees."

In response, the Union points to the Pension and Disability Benefits Agreement. Under the terms of that document, arbitration is available for any dispute that may "arise between any Employee (as defined in the Plans) and the Company." Although the definition of "Employee" does not specifically include retirees, the Union points to two other definitions to support its argument. First, the Summary Plan Description defines "Pensioner" as "an Employee who retires under the Plan and is entitled to Retirement Income Benefits pursuant

to the Plan." In addition, it defines "Terminated Employee" as "an Employee who is terminated for any reason . . ." The Union essentially argues that although "Employee" is not defined to include retirees, the functional equivalent of retirees (Pensioners and Terminated Employees) are defined in such a way that they necessarily qualify as "Employees." Furthermore, the Union points out that to the extent this interpretation conflicts with the text of the Summary Plan Description, it is entitled to rely on the more favorable language from the Pension and Disability Benefits Agreement. *See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002).

[7] It is a close question as to which side presents the better textual interpretation of the plan documents. However, given the inherent absurdity of creating a pension dispute mechanism and then denying access to pensioners, and given our duty, under *Bergt*, to defer to the Pension and Disability Benefits Agreement when it conflicts with the Summary Plan Description, we hold that retirees are not excluded from the arbitration procedure.

## III.

The Plan also appeals from the District Court's March 13, 2006 Order denying its Motion to Stay. We review the district court's decision for abuse of discretion. *Sheet Metal Workers Int'l Ass'n v. Jason Mfg., Inc.*, 900 F.2d 1392, 1400-01 (9th Cir. 1990).

The crux of the Plan's argument is that because ASARCO is subject to an automatic stay in bankruptcy court, and because ASARCO is a necessary party to this litigation, the entire proceeding should be stayed. However, the Plan never directly argues that ASARCO *is* a necessary party to this litigation. Instead, the Plan rests its entire argument on the allegedly contradictory positions taken by the Union at various stages of the litigation.

In 2004, the Plan and ASARCO filed a motion to dismiss, arguing that ASARCO was not a proper defendant in an ERISA action. In response, the Union argued that ASARCO was a proper party, because in addition to being an employer, ASARCO acted as a plan administrator. The Union's memorandum in opposition to motion to dismiss included the following:

> ASARCO is the Plan Administrator, and, therefore, its inclusion as a defendant in this action is wholly appropriate. An order compelling arbitration must necessarily include ASARCO, as it is party to the relevant collective bargaining agreements setting forth the obligation to arbitrate, it is the party that would appear before any arbitrator, and it is the party that would implement any orders of the arbitrator in the present dispute.

The Plan argues that the Union is barred, by the doctrine of judicial estoppel, from opposing the motion to stay, since the Union argued in 2004 that ASARCO was a necessary party to the litigation.

We generally consider three factors when determining whether to apply the doctrine of judicial estoppel. First, we determine whether "a party's later position [is] 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citations omitted). Second, we inquire whether the party achieved success in the prior proceeding, since "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " *Id.* (citation omitted). Finally, we consider whether the party asserting an inconsistent position would achieve an unfair advantage if not estopped. *Id.* at 751.

[8] The Plan has not demonstrated these factors in the present case. First, it is not clear that the Union's 2004 position

in its opposition to ASARCO's motion to dismiss was necessarily inconsistent with its later position in opposition to stay. There is a crucial distinction between arguing that a party is *proper* and should not be dismissed, and arguing that a party is *necessary* and the litigation cannot proceed without it. More importantly, the district court never *held* that ASARCO was a necessary party to the litigation. Instead, the district court held only that ASARCO "acted as plan administrator" and was therefore "a proper party to this action." Because the Plan has failed to demonstrate the first two elements of our judicial estoppel analysis, we hold that the doctrine does not apply, and do not need to reach the third element of unfair advantage.

We also reject the Plan's argument that the doctrine of "law of the case" applies. The "law of the case acts as a bar only when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Because the district court never *held* that ASARCO was a necessary party to the litigation, the doctrine does not apply.

## IV.

Finally, the Plan appeals from the district court's award of attorney's fees. We review the district court's decision for abuse of discretion. *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005).

The Plan concedes that, as a general rule, the prevailing party on an ERISA claim is entitled to attorney's fees, "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotations and citation omitted). The Plan rests its entire argument, therefore, on the distinction between the Union and the individual named appellees. The Plan argues that it was the Union that filed the lawsuit and the Union that incurred the attorney's fees, but it was the *named appellees* that prevailed,

since the district court conditioned its summary judgment on their substitution for the Union. This argument elevates form over substance. The Union brought this litigation on behalf of its retirees, and it prevailed. The fact that the district court only "conditionally granted" the Union's motion for summary judgment is of no real consequence.

The Plan also argues that the district court erred when it failed to address specifically each of the factors from *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 452-53 (9th Cir. 1980). As an initial matter, the district court was not required to engage in a discussion of the *Hummell* factors, because the Union prevailed on its motion for summary judgment. *See Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994). Furthermore, the district court did, in fact, address the *Hummell* factors in a lengthy footnote.

The Plan next argues that the district court abused its discretion when it calculated the Union's legal fees at an average of $300 per hour, because counsel maintained a discounted fee arrangement with the Union and only charged $100 to $110 per hour. But "[w]e have repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citation and quotations omitted). Instead, as the district court correctly held, the starting point for calculating attorney's fees is "the prevailing market rate[ ] in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 860 (9th Cir. 2003).

To calculate the prevailing market rate for ERISA-related legal work, the district court relied on *Morgan v. Wal-Mart Associates' Health and Welfare Plan*, 214 F. Supp. 2d 1047 (D. Ariz. 2002). In *Morgan*, the court found that in 2002, "the customary fee charged by ERISA plaintiff's attorneys in Arizona is $275 per hour." *Id*. at 1054. The district court took that number and adjusted it upwards slightly to account for inflation.

**[9]** The district court also relied on a declaration from the Union's counsel, which established that the firm typically charged a blended rate of $300 per hour for ERISA-related work. The district court could properly rely on this declaration. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate"). The Plan has offered no evidence to support a lower market rate for ERISA-related work. Accordingly, we hold that the district court did not abuse its discretion when it set $300 per hour as a reasonable hourly rate.

**[10]** The Plan also argues that the district court abused its discretion in awarding attorney's fees, asserting that almost every entry on the Union's time sheet was improper, either because it was insufficiently detailed or because it improperly aggregated more than one task in a single description. As the party seeking attorney's fees, the Union bore "the burden of documenting the appropriate hours expended in the litigation," and was required to "submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted). However, attorneys are "not required to record in great detail how each minute of [their] time was expended." *Hensley*, 461 U.S. at 437 n.12. They need only "keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id*. at 441 (Burger, C.J., concurring). We have reviewed the relevant time records, and hold that they are sufficiently detailed for the district court to have made a determination of reasonableness.

**[11]** Finally, the Plan argues that the district court abused its discretion when it awarded legal fees against both ASARCO and the Plan, because ASARCO is subject to an

automatic stay in bankruptcy. The Union contends that ASARCO is not precluded from contributing its share of the fees, because under 11 U.S.C. § 1113 and § 1114, actions seeking to enforce a collective bargaining agreement are not subject to automatic stay. This issue has not been fully briefed before the district court, and we are not in a position to decide the question now. Therefore, we remand to the district court to decide the issue or refer the matter to the bankruptcy court to determine what effect, if any, the automatic stay should have on the district court's award of attorney's fees.

**AFFIRMED in part and REMANDED in part.**