UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-2013**

———————

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO,
LOCAL UNION NO. 289,

            Plaintiff - Appellee,

      v.

VERIZON SOUTH, INC.,

            Defendant - Appellant.

———————

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  William L. Osteen,
Jr., District Judge.  (1:11-cv-00334-WO-JEP)

———————

Submitted:  July 9, 2013              Decided:  July 19, 2013

———————

Before WILKINSON, NIEMEYER, and GREGORY, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Gregory Hearing, THOMPSON SIZEMORE GONZALEZ & HEARING, P.A.,
Tampa, Florida, for Appellant.  Narendra K. Ghosh, Michael G.
Okun, PATTERSON HARKAVY LLP, Chapel Hill, North Carolina, for
Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Verizon South, Inc. ("Verizon") appeals the district court's order denying its motion to dismiss and granting the motion filed by the International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 289 ("Union") to compel arbitration under the Labor Management Relations Act, 29 U.S.C. § 185 (2006), of the grievance filed by Brian Pollard, whom Verizon had twice terminated from employment. Finding no error in the district court's decision to compel arbitration, we affirm.

The sole issue before us is whether, at the time of Pollard's second discharge,[*] he was a probationary employee without the right to arbitrate his discharge under the collective bargaining agreement ("CBA") between the Union and Verizon. Verizon claims that he was; but the Union asserts that Pollard was a post-grievance rehire (1) who was not a "new employee" subject to the seven-month probationary period set forth in Article 17 of the CBA, and (2) whose arbitration

---

[*] In 2009, Brian Pollard and six of his fellow Verizon employees were discharged from their employment. At that time, Pollard had already finished the probationary period, and the Union filed a grievance on his behalf. In 2010, the Union and Verizon settled the seven employees' grievances by entering into a settlement agreement in which Verizon agreed to rehire them under certain conditions. Fewer than six months after his rehire, Pollard was discharged again.

2

privileges were not conditioned under the applicable settlement agreement upon a successful completion of a seven-month probationary period. This court reviews de novo a district court's determination whether a dispute is arbitrable. Peabody Holding Co. v. United Mine Workers, 665 F.3d 96, 101 (4th Cir. 2012).

While "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO, 204 F.3d 523, 528 (4th Cir. 2000) (internal quotation marks omitted), federal labor policy favors arbitration of disputes between parties who have entered into a collective bargaining agreement, given "the greater institutional competence of arbitrators in interpreting collective-bargaining agreements" and because arbitration fosters the goal of "peaceful resolution of labor disputes." AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 650 (1986) (internal quotation marks omitted). In the labor relations context, as a result, "[w]hen interpreting a contract containing an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

3

asserted dispute." Peabody Holding Co., 665 F.3d at 104 (internal quotation marks omitted).

Given this presumption favoring arbitrability, we agree with the district court that the CBA and settlement agreements are, at minimum, reasonably susceptible to the interpretation that the Union advances. First, there is no dispute that the CBA does not define whether the term "new employee" as used in Article 17 includes rehires or is limited exclusively to those individuals who have never before been employed by Verizon. As the Union observes, the CBA differentiates between rehires and first-timers in several of its other provisions, so it is not beyond the pale to believe that Article 17 likewise contemplates some distinction between these statuses.

Nor does the settlement agreement prove Verizon's point, despite the company's efforts to make it do so. As the Union observes, Paragraph 8 provides that Pollard will be treated "as a rehire" for purposes of "all contractual benefits, including but not limited to" vacation preferences and the like. Given the context of the agreement, we cannot say that it would be unreasonable to conclude that the right to arbitrate one's termination is a "contractual benefit" protected by Paragraph 8. And because a "rehire" is arguably not subject to Article 17's probationary period because he is not a "new employee," it is at

4

least plausible that Paragraph 8 guarantees Pollard the right to arbitrate any discharge after his rehire.

Paragraph 10 of the settlement agreement does not dictate to the contrary. According to Verizon, Paragraph 10's recitation of "the required" seven-month probationary period evidences the parties' assumption that Article 17's "new employee" probationary period applied to Pollard upon his rehire. But as the Union points out, Paragraph 10 is solely concerned with bridging the grievants' seniority: it simply states that "seniority will be restored" after completion of "the required" seven-month probationary period. In the Union's view, Paragraph 10 simply references a seven-month probationary period for purposes of calculating seniority; it does not impose a similar period for purposes of delaying arbitration rights.

Although Verizon argues that the Union's interpretation of Paragraph 10 is fatally defective for a variety of reasons, we disagree. This is not to say that we reject Verizon's interpretation of the CBA and settlement agreement out of hand. But in arguing that the relevant agreements are not reasonably susceptible to the Union's opposite interpretation, Verizon overstates the strength of its case.

"Doubts" as to whether an arbitration clause covers a given dispute "should be resolved in favor of coverage." AT &

5

T, 475 U.S. at 650. See Peabody, 665 F.3d at 105 (applying presumption of arbitrability where agreement was ambiguous). Regardless of "[w]hether the Union's interpretation is the more persuasive of the two, it is at the very least a reasonable interpretation of the relevant language." United Steelworkers v. Ret. Income Plan For Hourly-Rated Employees of ASARCO, Inc., 512 F.3d 555, 561 (9th Cir. 2008). The district court was therefore correct to compel arbitration of Pollard's second discharge.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before this court and argument will not aid the decisional process.

AFFIRMED