**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE**

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE 1199NW,<br><br>　　　　　　Appellant,<br><br>　　　　v.<br><br>SNOHOMISH COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, d/b/a EvergreenHealth Monroe,<br><br>　　　　　　Respondent. | No. 85477-1-I<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

The respondent, Snohomish County Public Hospital District No. 1, has filed a motion for reconsideration of the opinion filed on June 10, 2024. The appellant, Service Employees International Union Healthcare 1199NW, has filed a response to the motion. The court has considered the motion, and a majority of the panel has determined that the motion should be denied but the opinion should be withdrawn and a substitute opinion filed; now, therefore, it is

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on June 10, 2024 is withdrawn; and it is further

No. 85477-1-I/2

ORDERED that a substitute published opinion shall be filed.

Birk, J.

Díaz, J.

Smith, C.J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE 1199NW, | No. 85477-1-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| SNOHOMISH COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, d/b/a EvergreenHealth Monroe, | |
| Respondent. | |

BIRK, J. — We are asked to determine whether materially identical arbitration provisions in two collective bargaining agreements (CBAs) cover the claims asserted in the action. Service Employees International Union Healthcare 1199NW (Union), relying on associational standing on behalf of its members, sued Snohomish County Public Hospital District No. 1 (Evergreen), asserting Evergreen breached the terms of a 401(a) retirement plan (Plan). Evergreen contends that because it agreed in the CBAs to abide by the terms of the Plan, a claim that it breached the Plan amounts also to a claim that it breached the CBAs, and therefore is subject to the CBAs' arbitration clauses. Because this rationale is insufficient to extend the reach of the arbitration clauses to the Union's claims, we reverse the trial court's ruling requiring arbitration and remand.

I

In 2019, Evergreen and the Union entered into two CBAs: one for support services and one for registered and licensed practical nurses. The purpose of the agreements was to set forth the understanding reached between the parties "with respect to wages, hours of work and conditions of employment" for Evergreen employees represented by the Union. The CBAs include grievance procedures, requiring an employee pursuing a grievance to go through a four-step procedure, culminating with the option of arbitration. The CBAs define an arbitrable grievance as "an alleged breach" of "the terms and conditions" of the Agreement.

In the CBAs, Evergreen agreed to provide a retirement plan, make matching contributions up to specified limits, and "make a good faith effort" to make its matching contributions "no less than twice per year." Article 14 of the support services CBA stated,

> During the term of this Agreement, [Evergreen] shall continue in full force and effect its Employee Retirement Plan. [Evergreen] will make a matching contribution equal to two dollars ($2.00) for each one dollar ($1.00) of compensation the employee contributes, up to [an Evergreen] contribution of five percent (5%) of the employee's eligible compensation in accordance with the terms of the retirement plan. . . . Beginning November 1, 2018, the Employer shall make a good faith effort to make its matching contributions to employees' retirement accounts no less than twice per year.

Article 14.5 of the registered nurse CBA stated,

> [Evergreen] shall provide during the term of this Agreement a retirement plan. Eligibility and benefits will be determined by the plan's terms. [Evergreen] will make a matching contribution equal to two dollars ($2.00) for each one dollar ($1.00) of compensation the employee contributes, up to [an Evergreen] contribution of five percent (5%) of the employee's eligible compensation in accordance with the terms of the retirement plan. . . . Beginning November 1,

2

2018, the Employer shall make a good faith effort to make its matching contributions to employees' retirement accounts no less than twice per year.

The 2019 CBAs were in effect from December 2018 through August 2020.

Evergreen adopted a plan document establishing the "Snohomish County Public Hospital District No. 1 401(a) Plan."[1] Under Article III of the Plan, all Evergreen employees are eligible to participate except temporary employees, on-call employees, and non-benefitted employees. Article IV of the Plan stated that "[w]ithin a reasonable time following the end of each calendar month, [Evergreen] will contribute on behalf of each Active Participant."

On January 19, 2023, the Union sued Evergreen alleging it failed "to contribute within a reasonable time following the end of each calendar month to [Union] members' 401(a) retirement plan accounts, despite its promise to do so in

---

[1] Evergreen offered extrinsic evidence in the trial court without providing full discovery, leading to procedural objections by the Union. We conclude it is not necessary to resort to extrinsic evidence to determine the scope of the arbitration provisions of the CBAs. See Thomas Ctr. Owners Ass'n v. Robert E. Thomas Tr., 20 Wn. App. 2d 690, 699, 501 P.3d 608, (quoting Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 134, 323 P.3d 1036 (2014) (plurality opinion) (" '[W]here the contract presents no ambiguity and no extrinsic evidence is required to make sense of the contract terms, contract interpretation is a question of law.' "), review denied, 199 Wn.2d 1014, 508 P.3d 697 (2022). We have nevertheless reviewed Evergreen's extrinsic evidence, and it would not change the analysis. Relevant to the establishment of the Plan, Evergreen's evidence showed that it established the terms of the Plan independently from the negotiated CBAs. According to declaration testimony Evergreen submitted, from 2018 to 2021, the plan document was a volume submitter document prepared by its vendor. In 2021, Evergreen moved the plan to a new vendor, and "restated the Plan onto an individually designed plan document," completely rewriting the Plan. Cf. Bonin v. Am. Airlines, Inc., 621 F.2d 635, 639 (5th Cir. 1980) (determining benefits under pension plan "not maintained pursuant to a [CBA]" were not subject to CBA grievance procedure).

the plan document."[2]  In addition to breach of the Plan, the Union asserted common law and statutory claims based on Evergreen's alleged failure to follow the Plan. Evergreen moved for summary judgment asking the court to dismiss the Union's claims and to compel exhaustion of the grievance and arbitration provisions of the CBAs.   Evergreen argued if the Union "establishes a breach of the Plan, [Evergreen] would have also breached the contribution requirements of Section 14.5 and Article 14 of the CBAs," and any breach of the CBAs is subject to arbitration.  The trial court granted Evergreen's motion, ruling "the Union's claims are encompassed by Section 14.5 and Article 14 of the CBAs, as the Union's claim of breach of the [Plan] would be a breach of the express provisions of the CBAs." The Union appeals.

II

The Union argues the trial court erred in compelling arbitration because its claims derive from Evergreen's obligation to make matching retirement contributions in accordance with the Plan, not the CBAs.  We agree.

We review de novo an order granting summary judgment.  Khung Thi Lam v. Glob. Med. Sys., Inc., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).  We also would engage in de novo review if the trial court's decision had been entered on a motion strictly framed to compel or deny arbitration.  Zuver v. Airtouch

---

[2] In its motion for reconsideration, Evergreen asserted "the Union previously filed a grievance on this very same matter, confirming that the Union itself views this dispute as within the scope of the CBAs."  However, the Union filed an employee grievance in April 2022 under the terms of the CBAs, not the Plan.  In its January 2023 lawsuit, the Union relied on the language of the Plan, not the CBAs.

Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004). Our review is limited to determining whether the Union's claims are arbitrable, without weighing the potential merits of the underlying claims. See Hanford Guards Union of Am, Local 21 . v. Gen. Elec. Co., 57 Wn.2d 491, 494, 358 P.2d 307 (1961); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649-50, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

"The principles governing arbitration of public sector labor disputes arising under a [CBA] are set forth by the United States Supreme Court in the 'Steelworkers Trilogy.' "[3] Mount Adams Sch. Dist. v. Cook, 150 Wn.2d 716, 723, 81 P.3d 111 (2003) (quoting Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula, 130 Wn.2d 401, 413, 924 P.2d 13 (1996)). In Washington, those principles have been framed as follows:

> "(1) Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which *on its face* is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication."

---

[3] See United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

Peninsula Sch. Dist., 130 Wn.2d at 413-14 (quoting Council of County & City Emps. v. Spokane County, 32 Wn. App. 422, 424-25, 647 P.2d 1058 (1982)).[4]

In Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287, 301, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010), the Court clarified that courts determine arbitrability by "(1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." The presumption of arbitrability reflects federal policy to place arbitration agreements on the same footing as other contracts, but does not override "the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' "[5] Id. at 302 (alteration in original) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)).

---

[4] In its response to Evergreen's motion for reconsideration, the Union argues we need not follow the Steelworkers cases and their progeny where the issue is "whether these workers waived their state right to enforce" the Plan. Washington has followed the Steelworkers cases, however, and the Union's claims here are not arbitrable under the traditional framework. See Mount Adams Sch. Dist. v. Cook, 150 Wn.2d 716, 723, 81 P.3d 111 (2003).

[5] After determining the parties agreed to arbitrate, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985), the court's next step is to determine the scope of the arbitration agreement. Genesco, Inc. v. T. Kakiuchi & Co. , 815 F.2d 840, 844 (2d Cir. 1987). The federal policy " 'favoring arbitration' " is "to make 'arbitration agreements as enforceable as other contracts, but not more so.' " Morgan v. Sundance, Inc., 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) (quoting Moses H. Cone, Mem'l Hosp. v. Mercury Const. Co., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. 2d 765 (1983); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 294, 404 n.12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)). "A court must hold a party to its arbitration contract just as the court would to any other kind. But the court may not devise novel rules to favor arbitration over litigation." Id.

A

Evergreen agrees the Union's "essential allegation" is that Evergreen breached the Plan. But Evergreen argues the issue is "simply whether this allegation would also be a breach of the CBA[s]," because, Evergreen says, it would "therefore" fall into the grievance and arbitration provisions of the CBAs.

Evergreen cites no case adopting this theory: that because it agreed in the CBA to follow the Plan, a claim that it breached the Plan is equivalent to a claim it breached the CBA and therefore falls within an arbitration clause covering alleged breaches of the CBA.[6] Evergreen points to cases discussing whether a claim is arbitrable because it would require interpretation of the terms of a CBA. In Meat

---

[6] The CBAs' arbitration clauses in this case are limited to alleged breaches of the "terms and conditions" of the CBAs. This distinguishes cases cited by Evergreen that discuss agreements to arbitrate disputes beyond only alleged breaches of the terms and conditions of the agreement in which the arbitration clause is found. For example, in Berman v. Tierra Real Estate Group, LLC, 23 Wn. App. 2d 387, 396, 5151 P.3 1004 (2022), the parties agreed to " 'bring all disputes between or among any of them to an early, efficient and final resolution' " by resolving " 'all disputes, claims and/or otherwise . . . by non-binding mediation and arbitration as provided [in the agreement.]' " (Emphasis omitted.) See also Lundquist v. Seattle Sch. Dist. No. 1, No. 80211-9-I, slip op. at 8 (Wash. Ct. App. Mar. 1, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/802119.pdf (CBA defined grievance as a " 'claim based upon an event or condition which affects the conditions or circumstances under which an employee works, allegedly caused by the misinterpretation or inequitable application of written SPS [Seattle Public Schools] regulations, rules, procedures, or SPS practices and/or the provisions of this Agreement."); Inlandboatmens Union of Pac. v. Dutra Grp., 279 F.3d 1077, 1075 (9th Cir. 2002) (arbitration clause covered " '[a]ny dispute concerning the interpretation or any other dispute between the parties hereto regarding wages, working conditions, or any other matters referred to in this Agreement." (alteration in original)), overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014). To the extent these cases found claims arbitrable under agreements to arbitrate "all disputes" or disputes over "working conditions" generally, they provide little guidance on the scope of an agreement to arbitrate only breaches of the "terms and conditions" of a particular contract.

Cutters Local No. 494 v. Roseauer's Super Markets, Inc., 29 Wn. App. 150, 159, 627 P.2d 1330 (1981), the union sought to arbitrate whether a change in the company's appearance standards implemented a month after the CBA was executed violated the CBA because it was not a proper exercise of management powers. The employer resisted arbitration, arguing the CBA contained "no express provision" covering its new policy. Id. at 156. We concluded the claim was arbitrable, first because past practices were an implied part of the bargaining process and whether employees' past appearances practices should continue was a question for the arbitrator, and second because determining whether the new policy fell within the CBA's "management function clause" required interpretation of the CBA. Id. at 156-58. " 'Interpretation' of the [CBA] was expressly made the subject of arbitration."[7] Id. at 159.

_____

[7] Just as Evergreen did not cite Meat Cutters to support a theory of arbitrability until oral argument as noted in the next footnote, Evergreen's motion for reconsideration presented another new argument, that the Union's claims are arbitrable on the basis that they depend on interpretation of the CBAs. Evergreen did not argue this as a basis for arbitrability either in the trial court or in its appellate briefing. But the cases Evergreen cites in support of this new theory applied arbitration clauses covering any claims requiring an interpretation of the CBA. Chelan County v. Chelan County Deputy Sheriff's Ass'n, 162 Wn. App. 176, 182, 252 P.3d 421 (2011) (arbitration provisions covering "any grievance" defined as "a dispute involving the interpretation, application or alleged violation of any provision of this Agreement."); United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 565, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960) (arbitration clause covering "all disputes between the parties 'as to the meaning interpretation and application of the provisions of this agreement.' ") The arbitration clauses here do not extend to claims on this basis. Evergreen also cites Council of County & City Emps. v. Spokane County, 32 Wn. App. 422, 423-25, 647 P.2d 1058 (1982), which held a claim requesting overtime pay for an alleged unilateral change in an employee's work schedule was arbitrable, and recognized a claim requiring interpretation of a CBA may be arbitrable without an arbitration clause expressly so providing. But the case is still distinguishable, because the arbitration clause was triggered in general terms " 'should an employee feel that his rights and privileges' " have been

Meat Cutters is distinguishable because the Union bases its claims on only an alleged breach of the Plan, not an alleged breach of the CBAs, and Meat Cutters did not involve or discuss an obligation arising separately from the CBA. The Union's claims that Evergreen breached the terms of the Plan require interpretation only of the Plan's terms and the Plan's requirements for matching contributions. They do not require interpretation of any of the CBAs' terms, and do not implicate the CBAs separate undertakings concerning matching contributions. The rationale of Meat Cutters indicates the Union's claim is not arbitrable.[8] Even so, Evergreen has pointed to other cases that it argues extended CBA arbitration clauses to disputes regarding separately defined retirement benefits.

In United Steelworkers of America v. Mead Corp., 21 F.3d 128, 130 (6th Cir. 1994), the company and the union entered into a CBA which stated, " 'The Company agrees to maintain, during the term of this Agreement, a retirement plan as agreed upon with the Union.' " The company proposed a plan to offer cash

---

violated, the claim was premised on the CBA and fell within that scope, and the claim implicated no rights arising independently from the CBA. Id. at 426. These decisions support no generalization that a claim is arbitrable regardless of the scope of an arbitration clause merely because it would involve interpretation of a CBA, nor do any apply an arbitration clause limited to claims of breach of the terms and conditions of the CBAs, such as the ones in this case.

[8] In its brief, Evergreen did not cite Meat Cutters to support its theory of arbitrability, but instead for the undisputed points that we look to the face of the CBAs to determine whether the parties agreed to arbitrate the Union's claims, past practices and bargaining history should be an implied part of the bargaining agreement, and the sole question before the court is arbitrability. However, at oral argument Evergreen cited Meat Cutters as supporting its theory. Wash. Ct. of Appeals oral argument, Serv. Emps. Int'l Union Healthcare 1199NW v. Snohomish County Pub. Hosp. Dist. No. 1, No. 85477-1-I (April 12, 2024), at 17 min., 3 sec., https://tvw.org/video/division-1-court-of-appeals-2024041151/?eventID=2024041 151.

bonuses to employees on the condition that they agreed to retire. Id. at 130. The union filed a grievance, arguing the new plan violated the CBA. Id. The court agreed the grievance was arbitrable, explaining, "regardless of whether the retirement incentive program reduces the employees' retirement benefits, the Company's implementation of the program arguably constitutes a failure to maintain the agreed-upon retirement plan." Id. at 132. Resolution of the issue would require a court to construe the CBA term " 'maintain,' " and therefore fell within the scope of the CBA's arbitration clause, which recognized " '[o]nly grievances charging that the Company has violated this Agreement and involving the interpretation of, or compliance with, this Agreement.' " Id. at 129, 132. But the union in Mead did not assert a claim of breach of the existing or the proposed retirement plan. Rather, the claim was only that the company had breached the CBA by proposing a new plan inconsistent with its CBA undertakings.

In Kop-Flex Emerson Power Transmission Corp. v. International Association of Machinists & Aerospace Workers Local Lodge No. 1784, 840 F.Supp.2d 885, 890 (D. Md. 2012), the parties disagreed whether the current CBA or an expired CBA controlled the relationship between Kop-Flex and former employee retirees. Kop-Flex argued it was not obligated to arbitrate under the current CBA because "the retirees retired before the effective date of the current CBA and [were] therefore not covered by that CBA or its arbitration procedures." Id. at 888. The court rejected the argument because the parties had bargained to include provisions for retiree benefits in the current CBA. Id. at 892. Kop-Flex is inapplicable, because as in Mead the claimants sought to enforce only

undertakings in the CBA, and the parties disputed only whether the claimants could assert that claim, not whether, if they could, it would be arbitrable.

Evergreen also cites United Steelworkers of America v. Retired Income Plan For Hourly-Rated Employees of ASARCO, Inc., 512 F.3d 555, 561 (9th Cir. 2008), which concerned an agreement to arbitrate "the number of years of Continuous Service" or "the age" of an employee participating in a pension plan. After "intense negotiations" over how to characterize staff reductions at an ASARCO plant, employees claimed benefits based on postlayoff service accrual. Id. at 558. The employer refused arbitration, arguing that whether employees could claim postlayoff accrual was a question of interpretation of the plan, and therefore subject to a separate grievance procedure. Id. at 561. The union characterized the dispute as being "akin to ministerial disagreement" over the calculation of years of service and age. Id. Concluding that the union's interpretation of the arbitration clause was "at the very least a reasonable interpretation," the court resolved the two competing interpretations by applying the presumption of arbitrability. Id. ASARCO concerned a specific agreement to arbitrate two discrete questions—years of service and age—and a dispute reasonably characterized as turning on determining the correct figures to use for years of service and age. The case did not address an argument like Evergreen's, that the employer's agreement in the CBA to follow the Plan means that a claim the employer breached the Plan amounts to a claim the employer breached the CBA within the scope of the CBA's arbitration clause.

11

Mead, Kop-Flex, and ASARCO all concerned retirement benefits and all required arbitration, but not based on the rationale Evergreen argues. Mead ordered arbitration where the claim explicitly asserted a breach of the CBA through the proposed adoption of a new retirement plan. Kop-Flex discussed the applicability of the current CBA to the former employee claimants. And ASARCO ordered arbitration because the arbitration clause specifically covered a dispute about years of service and age and the claim was characterizable as such. But none of these cases endorsed, or considered, Evergreen's theory.

Evergreen also relies on the treatment of "side agreements" discussed in Inlandboatmens Union v. Dutra Group, 279 F.3d 1075, 1079 (9th Cir. 2002), overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014). In Dutra, the union filed a grievance alleging Dutra violated the parties' CBA by relying on subcontractors using non-union labor. Id. at 1077. Before arbitration occurred, the parties entered into a settlement agreement, in which Dutra agreed among other things not to use non-union labor. Id. Later, the union brought suit alleging Dutra violated that provision of the settlement agreement. Id. After reviewing other circuits' treatment of "side agreements," the court adopted as Ninth Circuit law the rule that "disputes arising under a side agreement must be arbitrated if the dispute relates to a subject that is within the scope of the CBA's arbitration clause." Id. at 1080. But the alleged breach of the Plan here is not "within the scope" of the CBAs' arbitration clauses.

As noted above, the CBA's arbitration clause in Dutra covered " '[a]ny dispute concerning . . . wages, working conditions, or any other matters referred

to in this [CBA].' " Id. at 1077 (alteration in original). The settlement agreement in Dutra memorializing the employer's agreement not to use non-union labor clearly fell within the arbitration clause covering "working conditions" and "any other matters" referenced in the CBA. Id. The same cannot be said here, where the CBAs' arbitration clauses cover only alleged breaches of the terms and conditions of the CBAs, but the claim alleges only breach of the Plan. Indeed, Dutra grounded its recognition of a law governing "side agreements" in the fact that a CBA is "not a narrow document limited to its specific terms and provisions," but could also include, "among other things, written side agreements and oral understandings entered into by the parties to the collective bargaining relationship." Id. at 1079 (citing United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 578-80, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). This rationale acknowledges that the specific terms and provisions of a CBA do not cover the whole of the labor relationship. However, here the parties agreed to arbitrate only disputes over the terms and conditions of the CBA, which, by Dutra's reasoning, necessarily leaves outside their arbitration agreement other aspects of the labor relationship.[9] The

---

[9] That an arbitration clause may logically reach fewer than all possible disputes undermines another new argument Evergreen advanced for the first time in its motion for reconsideration. Evergreen argued based on Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999), that—it claims as a general proposition—factual allegations in a complaint need only " 'touch matters' " covered by the contract containing the arbitration clause to require arbitration. (Quoting Am. Forest Holdings, LLC v. Bank of Am., NA, CV-10-3004-RMP, 2011 WL 320911, at *1 (E.D. Wash. Jan. 28, 2011). Besides Evergreen's failing to present this argument, either, in the trial court or in its appellate briefing, Evergreen again argues a construction courts have given only to much more comprehensive arbitration clauses than are present here. Simula (and similar cases) gave this construction to arbitration clauses covering "[a]ll disputes arising in connection with this Agreement," and held that the "arising in connection with" and other similar

Union's claim of breach of the Plan may be determined solely by reference to the Plan, not any terms and conditions of the CBAs, so Dutra's test for arbitrability is not met.

Evergreen's authorities do not support extending the CBAs' arbitration clauses covering only alleged breach of the terms and conditions of the CBAs to the Union's claims for only alleged breach of the Plan.[10]

B

In Washington, courts have declined to find arbitrability for claims based on obligations arising independently from CBAs. In International Association of Firefighters v. Spokane Airports, firefighters at the Spokane airport opted out of the social security plan, and the employer obtained refunds from the federal

---

language required arbitration when the factual allegations touch matters covered by the contract. Id. at 720-21; see also Mitsubishi, 473 U.S. at 624 n.13 (arbitration clause covering "[a]ll disputes" which may "arise . . . out of or in relation to" the contract (alteration in original)); Genesco, 815 F.2d at 845 (arbitration clauses covering "all claims and disputes of whatever nature arising under this contract" and "any controversy arising out of or relating to this contract."). The parties here did not agree to arbitrate all disputes "arising in connection with" the CBAs, but instead only claims of breach of "the terms and conditions" of the CBAs. These decisions support no generalization that a claim is arbitrable regardless of the scope of an arbitration clause merely because factual allegations may touch matters covered by a CBA, nor do any apply an arbitration clause limited as the ones before the court are to claims of breach of the terms and conditions of the CBAs.

[10] Based on the authorities presented to the court as well as the court's own research, Evergreen's theory of arbitrability appears novel and potentially sweeping. For instance, each CBA here also provided for a long term disability plan, and in the CBAs Evergreen agreed that "[e]ligibility and benefits" will be "determined by the plan's terms." Under Evergreen's theory, any claim that a long term disability claim was improperly denied contrary to the disability "plan's terms" could be characterized as an arbitrable breach of the CBA. The agreement between Evergreen and the Union to arbitrate only alleged breaches of the terms and conditions of the CBAs does not fairly signal "that the parties agreed to arbitrate *that dispute*." Granite Rock, 561 U.S. at 297.

14

government both for the money the employees had paid into social security and the employer's matching contributions. 146 Wn.2d 207, 211, 45 P.3d 186 (2002). When the firefighters' union sued to recover the refunded employer's matching contributions, the employer argued the claim was arbitrable under a provision covering " '[g]rievances or disputes . . . involving interpretation or application of' " the CBA. Id. at 217 (alterations in original). The court disagreed, explaining the employer's obligation to provide the firefighters with a "corresponding benefit" after they opted out of social security did not arise from the CBA but from "the compensatory nature of the social security benefits in this employment relationship." Id. On the merits, the court explained that under Washington law, the employer's obligation to fund a retirement system "arises from the employment relationship when the employee's right to the retirement benefit exists at the outset of the employment relationship." Id. at 222 (citing Bakenhus v. City of Seattle, 48 Wn.2d 695, 699, 296 P.2d 536 (1956)). The matching contributions were "properly considered compensatory in the employment relationship" and part of the firefighters' "total compensation package." Id. The employer's reimbursement obligation arose independently from the CBA.

Similarly, in Lee v. Evergreen Hospital Medical Center, Lee filed suit against their employer alleging it denied emergency room nurses their statutorily guaranteed rest and meal breaks. 7 Wn. App. 2d 566, 570-71, 434 P.3d 1071 (2019), aff'd on other grounds, 195 Wn.2d 699, 701, 464 P.3d 209 (2020). The CBA narrowly defined an arbitrable grievance as " 'an alleged breach of the *express* terms and conditions' of the [CBA]." Id. at 573, 579. Analogous to the

CBAs in this case providing that Evergreen will follow the Plan, the CBA in Lee stated that meal and rest breaks " 'shall be administered in accordance with state law (WAC 296-126-092).' " Id. at 574. Despite the CBA agreement to follow the meal and rest break regulation, we did not agree that Lee's claim of breach of the regulation amounted to an alleged breach of the CBA within its arbitration clause for alleged breach of its express terms and conditions. Emphasizing Lee's assertion of a statutory claim, we held "[t]he terms of this CBA do not allow an alleged statutory breach to be grieved under this narrow definition." Id. at 574. We explained, "an employee retains the ability to enforce her statutory rights in court unless the employees clearly and expressly agreed in the CBA to arbitrate their statutory claims."[11] Id. at 577.

Federal authority has long held that a CBA's merely mentioning a separate retirement plan does not bring disputes arising under the plan into the CBA's arbitration clause. In Printing Specialties & Paper Products Union Local 680 v. Nabisco Brands, Inc., 833 F.2d 102, 105 (7th Cir. 1987), the court held that a "passing reference to the Pension Plan in the [CBA] does not bring specific pension disputes . . . under the umbrella of the arbitration clause of the agreement." In finding the dispute under the pension plan did not fall within the CBA's arbitration clause, the court said, "The [CBA] did not incorporate the provisions of the Pension Plan, but merely stated that Nabisco would keep the Pension Plan in full force and

---

[11] The Union also asserts statutory claims arising from the alleged breach of the Plan. Because we conclude the CBAs' arbitration clauses do not cover the Union's claims for alleged breach of the Plan, it is not necessary to analyze whether the Union's statutory claims would escape arbitration based independently on the standards described in Lee.

effect." Id. In RCA Corp. v. Local 241, International Federation of Professional & Technical Engineers, 700 F.2d 921, 922 (3d Cir. 1983), where the CBA contained an arbitration clause but the retirement plan did not, the court held "the disputes were arbitrable to the extent that the claims involved alleged violations of the [CBA]," and "were non-arbitrable to the extent that they involved violations of the Retirement Plan *alone*." The court stressed, "[t]he mere mentioning of the Retirement Plan in the General Agreement is insufficient reason to construe the Retirement Plan as part and parcel of the General Agreement."[12] Id. at 927.

Evergreen's agreement in the CBAs to "continue" the Plan "in full force and effect," "provide" the Plan, and make matching contributions "in accordance with the terms" of the Plan corresponds to the employer's agreement in Lee to provide meal and rest breaks " 'in accordance with' " the state regulation. 7 Wn. App. 2d at 574. We held in Lee this did not mean a claim for breach of the regulation

_____

[12] Authority outside Washington has held claims arbitrable when the CBA incorporates by reference another document on which the claims are based. In Jenisio v. Ozark Airlines, Inc., 187 F.3d 970, 973 (8th Cir. 1999), the court held a retirement plan was subject to the arbitration requirement where the CBA set "forth material amendments to and elements of the [plan]: how benefits are calculated, the size of the annual benefit, the age an employee must reach to obtain his benefits, and provisions for early retirement, among others." The court found that "[i]ncluding such fundamental components of the [plan] in the [CBA] demonstrates a clear relationship between the Plan and the CBA and supports the conclusion that the Plan was incorporated by reference in the CBA." Id. Additionally, in Air Line Pilots Association, International v. Delta Air Lines, Inc., 863 F.2d 87, 95 (D.C. Cir. 1988), the court held a disability grievance was subject to arbitration where the CBA "doubly incorporated the relevant terms of the Plan: it purported to incorporate the whole Plan by reference, and it literally incorporated the terms relating to disability benefits." "This parallel structure suggests that the key terms in the [dispute] were products of negotiation and bargaining." Id. at 94-95. Evergreen does not argue the CBAs incorporated the Plan by reference and under these authorities their language is insufficient to do so.

17

amounted to breach of the terms of the CBA triggering its arbitration clause. We reach the same conclusion here. We hold that when a CBA's arbitration clause is limited to covering alleged breaches of the CBA's terms and conditions, the employer's agreement in the CBA to provide and follow the terms of a separate benefit plan does not in and of itself bring disputes arising under the benefit plan into the scope of the CBA's arbitration clause. The CBAs' arbitration clauses therefore do not cover the Union's claims, and it was error to grant Evergreen's motion for summary judgment and to compel arbitration.[13]

We reverse and remand for proceedings consistent with this opinion.

_Birk, J._

WE CONCUR:

_Díaz, J._                    _Smith, C.J._

---

[13] Because we conclude the arbitration provisions of the CBAs do not cover the Union's claims, it is not necessary to reach the Union's arguments concerning discovery and continuance of Evergreen's summary judgment motion.